WILLIAMS *et al.*, Plaintiffs in Error, *vs.* NATURAL BRIDGE. PLANK ROAD Co., Defendants in Error.

1. The ownership of the soil under a public highway belongs to the adjoining, proprietor, the public having a mere right of way, or easement, over the same.

2. Where a corporation formed under the act of the general assembly of February 27, 1851, (Sess. Acts, 1851, p. 260,) with the consent of a county court, located a plank road over and upon a county road : *held,* that the corporation was liable for damage caused by making said road ; as by endangering, by excavations, the stability of houses along the line of said road. The grant by the legislature of the right of locating a plank road, with the consent of the county court, on a county road, does not exclude the idea that the owner of the soil over which the county road passes, should have compensation for any injury he may sustain by converting a county into a plank road.

### *Error to St. Louis Land Court.*

This was an action by the plaintiffs, some of whom appeared by their mother, as their natural guardian, to recover damages caused by the construction, by the defendant, (a company incorporated under the act of February 27, 1851,) of a plank road. The said plank road was located by the said company, with the consent of the county court of St. Louis county, over and upon a county road of said county which ran over the lands of the plaintiffs, and had been used as a public highway for more than twenty years before the commencement of the said plank road. There was evidence showing. that Mary B. Williams, who appeared as the guardian of the minor plaintiffs, was in possession, together with her children, of the premises to which the alleged injury was done, and gave her consent to the construction. of the said plank road. It is unnecessary to set

forth the nature of the damage done, as the plaintiffs were forced to take a nonsuit by the giving of the following instruction, asked for by the defendant:

"If the jury believe from the evidence, that the acts and injuries complained of in the plaintiffs' petition, were done in, and were consequent from the making of the Natural Bridge Plank Road, and that the making thereof was upon a state or county highway or road, with the consent of the county court of St. Louis county, and that said state or county highway or road had been used for twenty years or more immediately preceding the commencement of said plank road as a public road or highway, then the jury should find for the defendant."

To the giving of this instruction plaintiffs excepted.

*Hudson* and *Thomas*, for plaintiff in error. 1. The question to be decided here is, whether a common county road or highway, established many years ago, before plank roads or railroads were thought of in this state, can be transferred to a private corporation by the legislature or the county court, for the purpose of being converted into a private road, without making just compensation for the injury done to the owner of the soil by the building of such road. When private property is taken for public uses, just compensation must be made. (1 Geo. R. 530–36 ; 2 Kent, 340.) The legislature had no right, even if they had intended to do so, to enter upon and appropriate land of private individuals for purposes other than those to which it had been originally dedicated in pursuance of the road law. (3 Hill, 567 ; 18 Wend. 9 ; 25 Wend. 462–4. See also, 2 Strange, 1004.) The intention of the legislature was to pass to private corporations whatever right the public had in a public highway, leaving the question of damages for appropriating the soil to be settled between the owner and the corporation. When the right of way was originally granted, a common dirt road was all that parties contemplated.

*Cline & Jamison*, for defendant in error, cited 1 Pick. 417 ; 12 Mo. 414 ; 14 Mo. 20 ; 15 Mo. 651 ; 9 Conn. 436 ; 8 Cow. 146. This is an action for a *tort*, and the acts done

and caused to be done were authorized by law. (1 Pick. 435; 12 Mass. 482.) The acts done and caused to be done, by defendant, which are complained of by plaintiffs, were done by the permission of Mary B. Williams, the person then in possession of the premises described in the petition.

Scott, Judge, delivered the opinion of the court.

It is an error to suppose that the land over which a public road passes belongs to the state or county. The law, for the convenience of the community, has appropriated portions of the lands of individuals to be used as public roads or highways. Subject to this use or easement of the public, the soil over which the road passes remains in the owner, in the same manner as though no appropriation of it had been made. When the land of an individual is taken for a road, whether he gives it voluntarily or sells a right of way over it by claiming and receiving compensation, he must be understood as giving to the public power over it, to an extent that will enable it to construct such a road as the laws in force at the time require or permit to be made. The grant of a right of way for one purpose will not authorize the use of a road for another and a different purpose. One may be willing that there may be a right of way across his land for one purpose, and very unwilling that the same right should exist for another purpose. So, an authority to build one kind of road would not be a warrant for making another kind of road, which would increase the inconvenience and injury resulting to the owner.

At the time it is claimed this land was condemned for a high way, the law in force required that all roads should be laid out and cleared according to the utility of the same, with a proviso that no road should be laid out of a greater width than fifty nor of a less width than twenty feet, and directed that all roads should be cleared of trees one foot through, and of brush and limbs of trees which might incommode horsemen and carriages, and that no stump should exceed one foot in height, and that

all wet ground and small water courses should be causewayed or bridged in such manner as to enable horsemen and carriages to pass with facility. (R. C. 1825, p. 695.) Such was the kind of road for which a party yielded up his land. The act under which the defendant proceeded, created corporations for the purpose of making plank roads ; with the consent of the county court, it empowers the corporations to locate their roads on any portions of the county and state roads ; the corporations thereby authorized were allowed to exact tolls and could erect toll gates, and the manner of constructing their roads was to be determined by the boards of directors of the corporations, in such a mode, however, as to " secure and maintain a smooth and permanent road," the track of which to be made of plank or timber, or partly of both, or macadamizing. (Sess. Acts, 1851, p. 260.) The defendant, a corporation deriving its existence from this act, located a plank road on a county road laid out on the plaintiff's land, in front of their house, and cut the road so deep as to leave the house on a high elevation, impending the road, and so near as to endanger its stability and incommode the entrance into it. If the defendant has used the right of way taken from the plaintiffs, or those under whom they claim, for purposes injurious to them, and not contemplated at the time the right of way was taken, there is no reason why it should not compensate them for the injury resulting from the use of the right of way in a manner different from that intended when it was first taken. Justice requires that the defendant should pay the difference between the injury resulting from the use of the way for a plank road, and the use of it as a common state or county road. It is clear that plank roads require the removal of more soil, and are constructed in a manner different from that in which county roads were made when this right of way was first created, and that the work put upon plank roads greatly exceeds that which the law required to be put upon county roads. The grant by the legislature of the right of locating a plank road, with the consent of the county court, on a county road, does not exclude the idea that the owner of the

soil over which the county road passes, should have damages for any injury he may sustain by converting a county into a plank road. We should not so construe an act of the general assembly as to make it violate the constitution. The consent of the county can only operate to the extent of the power that court had over the road. If an increase of the right to the soil of the road is required for the plank way, why should not the owner, to the extent of the increase injurious to him, have a right to damages as well as any other owner? It has been held that the legislature have no power to authorize the construction of a railroad across a highway, without providing for a compensation to the owner of the land over which it passes. (3 Hill, N. Y. 367.) So it has been held that an action lies by the owner of land against a railroad company, if, in the construction of their road upon or across a public highway, they raise an embankment by which the owner of the land is obstructed in passing to and from the road, and his property is otherwise rendered less valuable, notwithstanding the charter of the company authorizes the entry upon and use of such public highway ; the license relates only to the road, and leaves the company liable to consequential damages sustained by individuals. (25 Wend. 464.)

The case of *Callender* v. *Marsh*, (1 Pick. 417,) is not applicable to that under consideration ; it is like that of the *City of St. Louis* v. *Taylor*, (14 Mo. Rep.) which arose out of the opening of streets in a city, which stands upon different considerations.

There was no instruction asked or point raised as to the consent of Mrs. Williams to the construction of the road in front of her house ; besides, her consent, as given, if it availed any thing, could not prejudice the rights of others.

The other judges concurring, the judgment will be reversed, and the cause remanded.